UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MOHAMMED S. AHMMED,

     Plaintiff,

  -against-        **MEMORANDUM AND OPINION**

COMMISSIONER OF SOCIAL SECURITY,  14 CV 6903 (KNF)

     Defendant.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

  Mohammed S. Ahmmed ("Ahmmed") commenced this action against the Commissioner of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") decision, dated December 28, 2012, finding him ineligible for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401, et seq., and supplemental security income ("SSI") benefits, pursuant to Title XVI of the SSA, 42 U.S.C. §§ 1381-1385. The ALJ's decision became final on July 14, 2014, when the Appeals Council denied Ahmmed's request for review.[1] This action followed. Before the Court are: (i) the plaintiff's motion for judgment on the pleadings, made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking an order granting him benefits or, alternatively, remanding the case to the Commissioner for further proceedings; and (ii) the Commissioner's cross-motion for judgment on the pleadings and in opposition to the plaintiff's motion.

---

[1] A Notice of Appeals Council Action denying Ahmmed's request for a review of the ALJ's decision is attached to his complaint.

1

An administrative hearing was held on November 21, 2012, before ALJ Patrick Kilgannon, at which Ahmmed, represented by counsel, testified. A vocational expert, Raymond Cestar, testified at the hearing via telephone. The issue before the ALJ was whether Ahmmed is disabled. The ALJ determined that Ahmmed: (1) meets the insured status requirements of the SSA through December 31, 2014; (2) has not engaged in substantial gainful activity since February 16, 2010, the date on which his alleged disability began; (3) has severe physical impairments, namely, an L4-L5 disc bulge, lumbar sprain/strain and myofascial pain syndrome; (4) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except for the following limitations: no climbing of ladders/ropes/scaffolds, only occasional climbing of ramps/stairs, and only occasional balancing, stooping, kneeling, crouching and crawling; (6) is capable of performing past relevant work as a food service manager, insofar as this work does not require the performance of work-related activities precluded by Ahmmed's residual functional capacity; and (7) has not been under a disability from February 16, 2010, through the date of the decision, that is, December 28, 2012.

## BACKGROUND

Ahmmed was born in 1974 in Bangladesh and emigrated to the United States in 1996. While residing in Bangladesh, Ahmmed earned a Bachelor of Arts degree in economics. From 1996 until February 2010, Ahmmed worked as a store manager for, among others, Domino's and Pappa John pizza restaurants. As part of his job, the plaintiff prepared food, answered the telephone and packaged food for delivery.

On February 16, 2010, Ahmmed was injured when his car was hit from behind, while stopped at a red light, by a taxi. On the same day, Ahmmed was taken to the emergency room of the Jacobi Medical Center in Bronx County, New York, where he complained of intense pain in his lower back and right arm. The emergency room records noted that Ahmmed ambulated with a steady gait, had a full range of motion in his right arm and was not in acute distress. During his hearing before the ALJ, Ahmmed testified that he suffered "really horrible pain," due to his injury, and was taking pain medications.

On March 3, 2010, Ahmmed began chiropractic treatment with Ala Rabadi, D.C. Dr. Rabadi reported that Ahmmed complained of lower back pain and right elbow pain as a result of a motor vehicle accident. He described the pain as sharp and reported that it affected his ability to sit, stand, bend, lie down and lift. Upon examination of the lumbar spine, Dr. Rabadi found that the plaintiff had bilateral paravertebral muscle spasm and limited range of motion. Dr. Rabadi recommended four weeks of chiropractic treatment and a home exercise program and referred the plaintiff to a physiatrist and ordered an MRI. The plaintiff's chiropractic treatment was continued for one year, until March 2011.

On March 22, 2010, Ahmmed consulted physician assistant Reuven Guy in the offices of Dr. Ali Guy at Medalliance Medical and Health Services. The evaluation was signed by Dr. Ali Guy and Reuven Guy PA-C. Ahmmed complained of lower back pain, which he described as moderate pain. Reuvan Guy found evidence of moderate paravertebral muscle muscular spasm, moderate tenderness to palpation of the paravertebral musculature and multiple trigger points. As a result of his examination, he also found active range of motion of the lumbar spine revealing forward flexion rotation of 75 degrees, positive left and right straight leg raising test in a seated position at 75 degrees with bilateral lower back pain. Reuvan Guy diagnosed posttraumatic

3

lumbar sprain/strain, rule out lumbar disc bulge versus herniation and traumatic myofascial pain syndrome. Ahmmed was prescribed medication and advised to continue chiropractic treatment and to begin physical therapy. According to Reuven Guy, Ahmmed was fully disabled.

An MRI was performed in April 2010 and revealed a disc bulge at L4-L5 with thecal sac impingement and acceleration-deceleration muscular injury. On May 4, 2010, Ahmmed was seen by Vivian Welton ("Welton"), a physician assistant for neurologist Dr. Sana Bloch. In a letter addressed to Dr. Guy, Welton reported that, since the time of his injury, Ahmmed has complained of continuing pain in the lower back, as well as intermittent dizzy spells triggered by change in position. She reported that Ahmmed's pain was exacerbated by lifting, bending, prolonged sitting, standing and walking, and a change in position. She noted that an MRI of the lumbar spine revealed disc bulging at L4 and L5 with thecal sac impingement.

Upon examination, Welton's findings included tenderness and spasm of the lumbar spine with decreased range of motion, flexion limited to 60/90 degrees, extension 10/30, lateral bending 20/20, with pain in all directions. Straight leg raising was positive at 60 degrees right and 60 degrees left. Ahmmed was able to do heel walking with difficulty, due to back pain, and tandem and toe walking without difficulty. A sensory examination showed a marked decrease in sensation to pinprick and soft touch in the upper and lower extremities. Sensation was normal on the right side. Welton diagnosed lumbar sprain with radiculopathy and opined that Ahmmed was "totally disabled due to his injuries." Welton noted that she had consulted with Dr. Bloch regarding the evaluation and recommended treatment.

During the period July 2010 through March 2011, Ahmmed received physical therapy through Dr. Guy's office. Throughout this period, Reuven Guy found that Ahmmed was "fully disabled." On May 24, 2011, Dr. Edward Southard performed a consultative orthopedic

4

examination of Ahmmed at the request of the Social Security Administration. On the basis of his examination, Dr. Southard offered a medical source statement in which he opined that Ahmmed had moderate limitations of standing and ambulation for prolonged distances, pushing, pulling, carrying and performing overhead activities in the upright positon, moderate to marked limitations of bending and moving about the waist, and mild limitations of sitting and lifting at the waist.

On June 24, 2011, Dr. Suryanarayan Putcha, a non-examining state-agency physician, reviewed Ahmmed's record and concluded that Ahmmed could lift or carry twenty pounds occasionally, lift ten pounds frequently, and, in an eight-hour workday, could sit and stand for about six hours. He also concluded that Ahmmed could climb, balance, stoop, kneel, crawl and crouch occasionally. He noted that Ahmmed had back pain, and that an MRI revealed a disc bulge and mild straightening of lumbar Lordosis. Dr. Putcha found no evidence of nerve compression and opined that the straight leg raises observed by Dr. Southard of only five degrees were not supported by the MRI results. He found no muscle atrophy and concluded that Ahmmed's reflexes were intact.

On February 20, 2012, Dr. Guy, Ahmmed's treating physician, prepared a Medical Source Statement of Ability To Do Work-Related Activities (Physical) in which he opined that, as a result of his physical impairments, the plaintiff could lift or carry up to ten pounds occasionally, could stand or walk for one hour and sit for two hours in an eight-hour day. Dr. Guy also reported that Ahmmed could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl, and could climb stairs and balance only occasionally. Dr. Guy found that Ahmmed did not require a cane to ambulate, and that he could shop, travel without a companion for assistance, walk a block at a reasonable pace on rough or uneven surfaces, use standard public

transportation, climb a few steps at a reasonable pace with the use of a single handrail, prepare a simple meal and feed himself, care for his personal hygiene and sort, handle or use paper or files.

## *Plaintiff's Contentions*

Ahmmed contends that the ALJ erred when he: (a) failed to give controlling weight to the opinion of Dr. Guy under the "treating physician rule"; (b) failed to evaluate properly the opinions provided by state-agency consultant Dr. Putcha, examining orthopedist Dr. Southard and physician assistants Reuven Guy and Welton; and (c) found that Ahmmed has the residual functional capacity to perform light work, with certain specified limitations, including his past relevant work as a food store manager.

Ahmmed contends that the ALJ erred in failing to accord Dr. Guy's opinion controlling weight and "compounded" this error when he accorded Dr. Guy's opinion "little weight." Ahmmed contends that Dr. Guy's opinion was supported by the medical records and evidence, his own examination of the plaintiff and the plaintiff's testimony, and was not inconsistent with other substantial evidence in the record. Ahmmed contends further that, even if the ALJ did not find that the treating physician's opinion in this case was entitled to controlling weight, he was required to consider the factors set forth in the pertinent regulations in evaluating Dr. Guy's opinion, that is, the length of Dr. Guy's treatment, the frequency of examination of the plaintiff, the nature and extent of the treatment relationship, whether the opinion was supported by the medical evidence, the consistency of opinion with the record as a whole, and whether the treating physician was a specialist.

The plaintiff contends further that the ALJ erred when he accorded "significant weight" to the opinion of state-agency physician Dr. Putcha because Dr. Putcha never examined the

6

plaintiff. In addition, Dr. Putcha suggested improperly that consultative examiner Dr. Southard was wrong when he found a positive straight leg raising test result.

The plaintiff also contends that the ALJ erred when he accorded only "little weight" to the opinions of Reuven Guy and Welton on the ground that they were physician assistants and, hence, "not acceptable medical sources." According to the plaintiff, the assessments of both physician assistants were signed by doctors, namely, Dr. Guy and Dr. Bloch, and therefore should have been treated as opinions of medical doctors. Alternatively, the plaintiff argues, even if the opinions of the physician assistants were not considered to be those of the medical doctors who signed their reports, the regulations provide for consideration of evidence from other sources, including medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, and others.

Ahmmed concludes that the ALJ's determination that he was not disabled was not supported by the "overwhelming evidence" presented in this case and was based on legal error.

### *Defendant's Contentions*

The Commissioner contends that the ALJ found correctly that Ahmmed was not disabled from February 16, 2010, the date on which he alleged he became disabled, through December 28, 2012, the date of the ALJ's decision. According to the Commissioner, in determining the plaintiff's residual functional capacity, the ALJ noted properly that "upon initial evaluation for his alleged disabling injury, Plaintiff's examination was essentially benign." In addition, the Commissioner contends that the ALJ correctly applied the relevant standards in weighing the medical opinion evidence in the record. According to the Commissioner, the plaintiff's contention that Dr. Guy's opinion should have been accorded controlling weight is without merit because: (a) his opinion that the plaintiff could not perform even sedentary work was not well-

7

supported by the objective examination findings; and (b) Reuven Guy, the physician assistant who examined the plaintiff in Dr. Guy's office, routinely reported that the plaintiff ambulated with a normal gait, had only moderate tenderness and spasm, and was able to flex forward in the lumbar spine from 70 to 90 degrees. Moreover, the Commissioner asserts, the ALJ acted properly in giving Dr. Southard's opinion, that the plaintiff had "moderate" and "marked" limitations, only some weight because he did not provide a specific assessment of the plaintiff's abilities or otherwise define what he meant by "moderate" or "marked."

The Commissioner contends further that the ALJ relied properly on Dr. Putcha's conclusion that the plaintiff could perform light work with limitations. While acknowledging that Dr. Putcha was a non-examining source, the Commissioner asserts that the "opinion of non-examining sources, such as State agency experts, may override opinions from treating sources, provided they are supported by evidence in the record." In this case, the Commissioner contends, the ALJ relied properly on Dr. Putcha's assessment and gave reasons for finding Dr. Putcha's opinion persuasive. The Commissioner also noted that Dr. Putcha is a licensed physician in the state of New York with a specialty in orthopedic surgery and is, therefore, qualified to render a medical opinion.

The Commissioner also contends that the ALJ was warranted in giving little weight to the opinions of the physician assistants, Reuven Guy and Welton, that the plaintiff was disabled. According to the Commissioner, under the pertinent regulations, an ALJ cannot be required to accord controlling weight to an opinion from a source who is not an acceptable medical source. Further, the regulations provide that the ultimate issue of disability is reserved to the Commissioner and, therefore, the opinions of the physician assistants in this regard need not be credited. Furthermore, the Commissioner contends, the ALJ considered the physician assistants'

8

conclusions in relation to the record and found that they were due little weight because they were not well supported by the clinical examination findings.

The Commissioner also contends that the ALJ found properly that Ahmmed's subjective symptoms and the supporting statement from his wife were not credible to the extent that they were inconsistent with the residual functional capacity assessment and that the ALJ determined properly that Ahmmed was able to perform his past relevant work. According to the Commissioner, Ahmmed had to show that he was unable to perform both the functions and duties of the specific job that he held previously and the functions and duties of that job as it is generally performed in the national economy. According to the vocational expert, as performed in the national economy, the job of manager in a pizza restaurant is light work, and requires only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling. The Commissioner maintains that because Ahmmed's former job as manager of a pizza restaurant, as performed in the national economy, did not exceed his residual functional capacity, the ALJ found properly that he could still perform this kind of work, and, thus, he was not under a disability.

## DISCUSSION

### *Legal Standard*

"After the pleadings are closed - but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial

9

evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Charter, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Administration's] regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

10

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

"Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Melville, 198 F.3d at 51. The Social Security Administration's regulations require that the ALJ develop the claimant's complete medical history and "make every reasonable effort" to assist the claimant in obtaining medical records. See 20 C.F.R. §§ 404.1512(d), 416.912(d).

"According to [the treating physician] rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d. Cir. 2008) (citations and internal quotation marks omitted).

"The opinion of the treating physician 'is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.'" Petrie v. Astrue, 412 Fed. Appx. 401, 405 (2d Cir. 2011) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)).

When a treating physician's opinion is not given controlling weight, the regulations require an ALJ to consider several factors in determining how much weight it should receive; these include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence, particularly medical signs and laboratory findings, (4) supporting opinions; (5) the consistency of the opinion with the record as a whole; and (6) whether the physician is a specialist in the area covering the particular medical issues. See Burgess, 537 F.3d at 129; 20 C.F.R. § 404.1527(c). "After considering the

above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." Burgess, 537 F.3d at 129 (citations and internal quotation marks omitted).

"[T]he opinions of non-examining sources, when supported by sufficient medical evidence in the record, can override the opinion of treating sources and be given significant weight." Montaldo v. Astrue, No. 10 Civ. 6163, 2012 WL 893186, at *14 (S.D.N.Y. Mar. 15, 2012); see also Wells v. Comm'r of Social Security, 338 Fed. Appx. 64, 66 (2d Cir. 2009) (ALJ did not err by relying on assessment of non-examining source of individual's functional capacity). "State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). "Therefore administrative law judges must consider findings and other opinions of State agency medical . . . consultants . . . as opinion evidence, except for the ultimate determination about whether you are disabled." Id.

"The term 'medical sources' refers to both 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources.'" SSR 06-03p (citing 20 C.F.R. §§ 404.1502 & 416.902). "In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources' . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to: Medical sources who are not 'acceptable medical sources,' such as . . . physician assistants." Id.

"Although the claimant bears the general burden of proving that he is disabled under the statute, 'if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national

12

economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Ordinarily, the Commissioner's burden is met "by resorting to the applicable medical vocational guidelines." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (citation omitted). In considering work which exists in the national economy, the ALJ "will decide whether to use a vocational expert or other specialist." 20 C.F.R. §§ 404.1566(e); 416.966(e).

### *Application of Legal Standard*

Upon careful review of the record, the Court finds that the ALJ followed the five-step sequential analysis properly when making the disability determination in this case and committed no legal error. The Court also finds that the ALJ's findings are supported by substantial evidence.

The plaintiff's contention that the ALJ erred when he failed to give controlling weight to the opinion of Dr. Guy is unfounded. As the ALJ explained, Dr. Guy's opinion that Ahmmed was able to perform only a significantly reduced range of sedentary work was not consistent with the substantial evidence in the record. In reviewing the evidence in the record, the ALJ noted correctly that, when the plaintiff presented at the Jacobi Medical Center following his injury, he appeared in no acute distress, ambulated with a steady gait and had full range of motion of the right arm notwithstanding his complaints of pain in his lower back and right arm. The ALJ also noted that the results of the physical examination of Ahmmed during his first consultation with Dr. Guy were "mostly unremarkable" and his follow-up physical examinations during the period July 2010 through March 2011 "showed the same unremarkable findings." Additionally, the ALJ found that the "objective evidence" did not support the findings reported in the Medical Source Statement of Ability To Do Work Related Activities (Physical), prepared by Dr. Guy on

February 20, 2012. In that statement, Dr. Guy found that the plaintiff was able to perform only a significantly reduced range of sedentary work. According to the ALJ, however, while it was reasonable to conclude that Ahmmed's persistent symptoms and range of motion restrictions - back tenderness, spasm, positive trigger points, straight leg raising at 75/90, limited extension and limited flexion - reduced his functional capacity, they did not do so to the extent that Dr. Guy described. The ALJ concluded properly that Dr. Guy's physical examination of the plaintiff failed to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled and noted that Dr. Guy's findings concerning activities the plaintiff could perform, such as shopping, traveling without a companion for assistance, using public transportation, and caring for personal hygiene, among others, were consistent with the residual functional capacity determination of light work with limitations.

Additionally, the ALJ considered, properly, the factors pertinent to determining how much weight a treating physician's opinion should receive, including the length of Ahmmed's relationship with Dr. Guy, the frequency of his examinations, relevant evidence supporting his opinion, and the consistency of the opinion with the record as a whole.

The plaintiff's contention that the ALJ erred when he accorded significant weight to the opinion of state-agency physician Dr. Putcha, because Dr. Putcha never examined the plaintiff, is also misplaced. The ALJ acknowledged that the opinions of non-examining state-agency physicians do not, as a general matter, deserve as much weight as those of treating physicians; however, he found that, in this case, Dr. Putcha's opinion deserved significant weight because it was consistent with the evidence and was supported by a convincing explanation of his findings.

Further, the plaintiff's contention that the ALJ erred when he accorded "little weight" to the opinions of physician assistants Reuven Guy and Welton is also without basis. The ALJ

14

explained that the assessments of the physician assistants that Ahmmed was fully disabled were inconsistent with the results of the physical examinations they performed, as well as with the prescribed treatment, which had been entirely conservative. The ALJ also noted that the opinions of the physician assistants who examined the plaintiff were properly accorded little weight because the final determination of disability is an issue reserved to the Commissioner.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is affirmed, the defendant's motion for judgment on the pleadings, Docket Entry No. 22, is granted, and the plaintiff's motion for judgment on the pleadings, Docket Entry No. 14, is denied.

Dated: New York, New York  
March 4, 2016

SO ORDERED:

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE